HALL, Judge.
In these three consolidated actions, plaintiff, a resident and elector of the city of Monroe, challenges the validity of four propositions approved by the electors at special elections held on July 9, 1977. The propositions were submitted to the electors pursuant to a plan of the Monroe Commission Council to transfer the operation, and eventually ownership, of the municipally-owned electric power and light system to Louisiana Power & Light Company. From judgments dismissing the three actions, plaintiff appealed.

Background Facts

The city of Monroe has owned and operated its own electric power generating and distribution system and its own water system for many years. Management of the systems has been vested in the City of Monroe Utilities Commission since 1956.
Expansions and improvements to the electrical and water systems have been financed through revenue bonds issued at various times pursuant to authorization of the qualified electors of the city, without designation of the amounts to be used for each system. The amount of revenue bonds currently outstanding is approximately $32,000,000.
The city’s electric power plant consists of four currently operable generating units, the largest of which was added in 1968. All units were designed to operate on natural gas but can be operated for short periods of time on fuel oil, which is more expensive and less efficient than natural gas.
In January 1973, as a result of the energy crisis, the Federal Power Commission entered orders curtailing the use of gas as fuel for generating electricity. With interstate gas no longer available to meet its needs the city was required to seek sources of intrastate gas for its gas supply. In 1976 the city’s requirements for natural gas during peak periods in the summer months amounted to approximately 23,000,000 cubic feet per day, but the city had firm contracts for only approximately 3,000,000 cubic feet per day. Natural gas was obtained from suppliers on an “if available” basis. Fuel oil was used to supplement the available gas supply.
Due to the increased regulation of natural gas, the increase in price, and the uncertainty of its supply, the city abandoned plans to construct additional gas-fired generating units. As a consequence the generating capacity has been unable to keep pace with the increased demand for electricity. It is considered essential for safety reasons that “firm capacity” (the amount of power which a generating plant is capable of producing with its largest unit out of service) should always exceed “peak load” (the highest demand at any given time by customers *1356 of the system). Peak load exceeded firm capacity in the summers of 1976 and 1977 and, considering normal increases in the growth of electrical power consumption, peak load will exceed firm capacity frequently by 1980.
In July 1976 an energy committee was appointed to study the energy needs of the city and to make recommendations concerning those needs. The committee commissioned the engineering firm Ford, Bacon & Davis Construction Corporation to make a study of the problem and to recommend a course of action which would assure the city a dependable source of electricity at competitive prices. The study was made and a report submitted on October 4, 1976. The report concluded that Louisiana Power & Light Company, which provides electrical service to much of the area near Monroe, was the best source of dependable electricity for the city and recommended that negotiations be undertaken for a sale, lease or other disposition of the entire system to LP&L. Pursuant to negotiations LP&L, in April 1977, proposed an operating agreement by which it would assume operation of the city’s electric system. Under the proposed agreement LP&L is required to operate and maintain the city’s electric distribution system, with the option to operate the city’s generating plants; to provide for the entirety of the electric power supply requirements of the city and its consumers; to make necessary improvements and extensions to the system; to maintain insurance on the system; to pay the bonded indebtedness attributable to the electric system, with the city obligated to pay the bonded indebtedness attributable to the water system; and to pay to the city 2 percent of monthly revenues from the sale of commercial and residential electric services or a minimum of $700,000 annually. The city is prohibited from granting anyone else a franchise, from issuing additional electric revenue bonds, and from selling or mortgaging the electric system. The city shall not have the power to regulate rates within or without the city and the regulatory power shall be surrendered to the Louisiana Public Service Commission without right to reinvest during the franchise period. LP&L is granted a 60-year franchise with an option to purchase the electric utility system when the outstanding bonds are paid. The agreement specifically provides that it is not a sale or lease as long as the existing bonds are outstanding. Rates to be charged the consumers are to be those rates presently being sought by LP&L before the Public Service Commission pending final approval; thereafter, all rates are to be regulated by the Public Service Commission. The agreement provides for and contemplates, but does not require, the issuance of refunding revenue bonds in order to retire the currently outstanding bonds.
Constitutional and statutory provisions required that several aspects of the proposed agreement be submitted to the electorate for approval. Since the agreement provided for a 60-year franchise and possible ultimate sale of the city’s utility to LP&L, Proposition No. 1[1] was submitted to the electorate pursuant to R.S. 33:4341, et seq. Since the agreement provided for investing of supervision, regulation and control in the Louisiana Public Service Commission, Proposition No. 2[2] was submitted to the electorate pursuant to La.Const. art. 4, § 21(C) and R.S. 33:4491, et seq. Addi *1357 tionally, Proposition No. 4[3] was submitted to the electorate in a separate election. Proposition No. 3[4] authorizing the issuance of refunding bonds was placed on the ballot pursuant to the requirements of R.S. 33:4251, et seq.
All four propositions were overwhelmingly approved (7 or 8 to 1) by a substantial majority of the electors voting in the July 9, 1977 election.

Exceptions of Peremption and No Right of Action

The trial court sustained an exception of peremption in the suit attacking the proposition authorizing issuance of refunding bonds and dismissed the suit, based on plaintiffs failure to timely comply with the provisions of the Bond Validation Law, R.S. 13:5121, et seq., governing such actions. Although plaintiff appealed from this judgment, no specification of error on appeal is directed to the judgment dismissing that suit and the correctness of that judgment will not be considered by this appellate court. See Rule IX-A, Uniform Rules of the Courts of Appeal, effective December 1, 1977. It is noted, however, that the same grounds of illegality urged in that suit are also urged in the suit attacking the operating agreement, which contains provisions relating to the issuance of the refunding bonds, and will be discussed in that context.
The trial court sustained exceptions of no right of action in the suit attacking the proposition authorizing the city to enter into the operating agreement and in the suit attacking the two propositions authorizing the city to surrender supervision and control, including rate-making authority, to the Public Service Commission. The suits contain multifaceted procedural and substantive attacks on the legality of the elections and the legality of the propositions submitted in the election. A determination *1358 of whether plaintiff has sufficient interest or standing to bring the actions depends on an analysis of each allegation of illegality, the nature of the city’s action complained of, plaintiffs interest as an elector or taxpayer in relation to each particular action complained of, and specific statutory provisions or general law applicable to each cause of action alleged. Our view is that plaintiff does have a right of action in respect to certain of the causes of action alleged in the two suits and that, consequently, the judgments of the district court dismissing the two suits on exceptions of no right of action are not entirely correct. The approach of this court in considering these appeals will be to consider and discuss each of plaintiff’s contentions of illegality. Some of the issues raised by the contentions are decided on the basis of plaintiff’s standing to sue and some are decided on the substantive merits of the issues, or both.
We note that although the trial court decided the cases on the basis of the exceptions, the trial court’s written opinion which thoroughly analyzed and discussed all of the issues has been very helpful to this reviewing court in its consideration of the issues on appeal.
Contention No. 1: “The people of Monroe may not be deprived of their right to reinvest themselves with rate-making authority.”
The operating agreement requires that the regulatory power of the city be surrendered to and vested in the Louisiana Public Service Commission. The agreement also provides that neither the city nor the Commission Council nor the Utilities Commission shall thereafter take any action seeking to effect the reinvestment of such regulatory powers in them so long as the franchise to LP&L remains in effect.
Plaintiff argues that the provision of the agreement prohibiting the citizens of Monroe or their governing body from taking any action, including the calling of an election, to reinvest the city with regulatory power over the electric utility is contrary to La.Const. art. 4, § 21(C) which provides:
“The commission shall have no power to regulate any common carrier or public utility owned, operated, or regulated on the effective date of this constitution by the governing authority of one or more political subdivisions, except by the approval of a majority of the electors voting in an election held for that purpose; however, a political subdivision may reinvest itself with such regulatory power in the manner in which it was surrendered

and to R.S. 33:4495 which provides:
“Any town, city, or parish which has voted to surrender its powers of supervision, regulation, and control respecting any class of public utilities may reinvest itself with such power by holding an election in the same manner and with all of the same formalities hereinabove provided, and if at the election a majority of the qualified electors voting on any proposition submitted to reinvest the municipality or parish with its powers of supervision, regulation and control the municipality or parish shall be deemed to have reinvested itself with its powers of supervision, regulation and control and such powers shall no longer be exercised by the Louisiana Public Service Commission when the clerk of the municipality or parish files in the office of the Louisiana Public Service Commission and with the Secretary of State a certified copy of the order.”
Neither the provision of the Constitution nor the statutory provision prohibits surrender by the governing body of a political subdivision, with approval by a majority of the electors of the subdivision, of its powers of supervision, regulation and control for a reasonable period of time. The authority to surrender or transfer regulatory power implies that it may be done for a specific reasonable period of time. Under the proposed agreement, the power of the city governing body or citizenry is *1359 not contracted away permanently, but only during the period of the franchise to LP&L. This provision of the proposed agreement does not conflict with the constitutional and statutory provisions. Implicit within the provisions of the law is the right to do just what the city is doing in this case, engaging a public utility to operate the system as the city’s agent, during which time the city agrees that the rates are to be fixed by an agency other than the contracting parties.
Plaintiff further contends that the agreement not to seek reinvestment of regulatory power constitutes a bartering away of the city’s police power by contract, contrary to established law. To the contrary, the agreement constitutes an exercise of the city’s police power in the interest of the health, safety and welfare of its citizens. The transfer of regulatory authority to the Louisiana Public Service Commission is specifically authorized by the Constitution and by statute.
Contention No. 2: “The transfer of the City’s electric utility system violates Act 45 of the 1976 legislative session.”
Plaintiff contends that the proposed operating agreement conflicts with Act 45 of 1976 in that the agreement proposes to turn the management of the electric utility system over to LP&L while Act 45 of 1976 places such management authority in the Utilities Commission.
The Utilities Commission was created by Act 256 of 1956, which was amended and reenacted by Act 756 of 1972 and again by Act 45 of 1976. The act creates the City of Monroe Utilities Commission as a part of the city government and empowers the Utilities Commission to exercise management and operation of and to prescribe rates for such public utilities as the Commission Council “may place under the management of the Commission.” Under the act the Utilities Commission has authority over only such public utilities as the Commission Council, in its discretion, may place under the Utility Commission’s management. Since the Commission Council has discretionary authority as to whether a utility will be placed under the management of the commission, it follows that the Commission Council may withdraw management of a utility from the Utilities Commission, as it proposes to do under the operating agreement with LP&L.
It is also to be noted that the proposed operating agreement is a three-party agreement, between the Commission Council, the Utilities Commission and LP&L. Nothing in the act precludes the Commission Council and the Utilities Commission from jointly entering into a contract with a third party to operate the electric power system. The act does not vest title to any of the utility properties in the Utilities Commission and the powers and duties of the Utilities Commission are subject in all respects to the final approval and authority of the Commission Council. The proposed operating agreement does not conflict with Act 45 of 1976.
Contention No. 3: “The City is required by law to retain rate-making authority over its electric utility.”
Plaintiff contends that the provisions of the operating agreement vesting rate-making authority in the Louisiana Public Service Commission violate R.S. 33:4256 which provides that no board or commission other than the governing authority of a municipality which has issued bonds and pledged the revenues of any utility for the payment thereof shall have authority to fix or supervise the making of the fees and charges for the products and services furnished by the utility.
The requirements of this statute are for the benefit and protection of the holders of outstanding utility revenue bonds issued by the municipality. Plaintiff is not the holder of any of the outstanding bonds and the district court correctly held that he has no standing or interest to assert *1360 a cause of action based on violation of this statute. Further, the plan contemplates the issuance of refunding bonds to retire the outstanding bonds which will remove any conflict with this statutory provision.
Contention No. 4: “The City had no authority to call the July 9, 1977 election.”
Plaintiff contends that R.S. 33:4341 authorizes the calling of an election only for a sale or lease of revenue-producing properties of a political subdivision and that since the proposed agreement in this case is expressly stated not to be either a sale or a lease, the election was unauthorized.
R.S. 33:4341 provides that any municipality may sell or lease any revenue-producing properties owned by them, including all proper franchises to operate the same not to exceed 60 years, provided the governing authority has been first authorized to do so by a vote of a majority of the qualified electors voting at an election held for that purpose. Since the proposed operating agreement grants a franchise and grants an option to purchase revenue-producing properties an election was properly called pursuant to the provisions of this statute.
Contention No. 5: “The transfer of the City’s Electric Utility constitutes a donation and/or loan of public funds, credit, property, or things of value to a private corporation.”
Plaintiff contends the proposed plan violates La.Const. art. 7, § 14(A) which provides:
“. . . the funds, credit, property, or things of value of the state or of any political subdivision shall not be loaned, pledged, or donated to or for any person, association, or corporation, public or private ...”
The proposed operating agreement is not a loan or donation to LP&L. The city is to receive substantial consideration for its agreement. LP&L is required to pay the bonded indebtedness of the city attributable to the electric system; pay the city a minimum of $700,000 per year; operate, maintain and extend the system at its expense; and supply the customers of the city with electricity during the life of the agreement. In no way can the agreement be considered gratuitous, or as a loan or donation in violation of the constitutional article.
Contention No. 6: “The Operating Agreement and proposed transfer violate the covenants of outstanding bonds.”
Plaintiff contends that the operating agreement violates the covenants contained in the outstanding revenue bonds which provide that rates, fees and charges will be fixed and maintained by the city sufficient to provide adequate revenue to service and pay the bonds and by which the city obligated himself not to sell, lease, encumber, or in any manner dispose of the system or to grant a franchise to any competing utility for operation within the city.
Since plaintiff is not the holder of an outstanding revenue bond he has no standing or interest to assert a cause of action based on breach of or enforcement of the covenants contained in the bonds. Furthermore, no bondholder has to date asserted such a cause of action and any problem in this connection will be removed with the issuance of the contemplated refunding bonds.
Contention No. 7: “The notice of the election was inadequate.”
Plaintiff contends that the notice of the election was not adequate, particularly in that the notice did not comply with R.S. 33:4344 which requires thirty days’ notice of the election, “. . . which notice shall include a reproduction of the proposition or a summary thereof.”
Proposition No. 1 contains an adequate summary of the proposed agreement, particularly when read with Propositions 2 *1361 and 3 which appeared in the published notices and on the ballot with Proposition No. 1. The public was advised that the proposal was for Louisiana Power & Light Company to operate the city’s electric power and light plant and system, that the city would grant to the company a 60-year franchise and the right and option to acquire the electric system, that refunding bonds were to be authorized, and that regulatory authority was to be surrendered to the Louisiana Public Service Commission, all in accordance with a proposal on file and available for inspection in the office of the Secretary-Treasurer in the City Hall. The notice given complied with the statutory requirement and was adequate to insure a fair and informed vote on the proposition.
Contention No. 8: “The City has no authority to transfer its rate-making authority.”
Plaintiff contends that R.S. 33:4491, et seq., and R.S. 45:1161, et seq., which authorize transfer of regulatory authority to the Louisiana Public Service Commission must be read in pari materia with and are limited by the provisions of R.S. 33:4256 which provides that no board or commission other than the governing body of the municipality which has issued revenue bonds shall have authority to fix or supervise the making of fees and charges. The plaintiff argues that there is no statutory authority for transferring regulatory jurisdiction where there are outstanding revenue bonds.
La.Const. art. 4, § 21(C) specifically provides for regulation by the Public Service Commission of a public utility, owned, operated or regulated on the effective date of the Constitution by the governing authority of a political subdivision upon the approval of a majority of the electors voting in an election held for that purpose. Neither the Constitution nor any of the statutory provisions authorizing transfer of regulatory jurisdiction contain any such limitation or prohibition with respect to municipalities which have outstanding revenue bonds. Any municipally-owned or operated utility system would almost certainly have outstanding revenue bonds. To apply the interpretation urged by plaintiff would be to render the constitutional and statutory provisions virtually meaningless. Had any such limitation or prohibition been intended, it would have been included within the constitutional provision and statutes specifically dealing with the subject. The transfer of jurisdiction authorized by the constitutional provision and statutes is not limited to those municipalities which do not have outstanding revenue bonds.
Contention No. 9: “L.R.S. 45:1161 et seq. repealed L.R.S. 33:4491 and the requirements of L.R.S. 45:1161 et seq. were not met.”
Plaintiff contends that the provisions of R.S. 33:4491, et seq., authorizing surrender of regulatory powers to the Public Service Commission after an election called either pursuant to an ordinance or to a petition were repealed by R.S. 45:1161, et seq., which provide for a transfer of regulatory authority under an election held pursuant to a petition only; the latter sét of statutes being the more recent enactment, having been adopted by Act 328 of 1975.
R.S. 33:4491 provides that any city desiring to surrender its powers of supervision; regulation and control over any local public utility may submit the question of surrendering these powers to the qualified electors of the city at a general or special election, either in pursuance of an ordinance adopted by the governing body or a petition of 10 percent of the qualified electors of the city. R.S. 33:4492, et seq., contain detailed provisions concerning the conduct of the election. The election for Proposition No. 2 was called pursuant to these statutes.
R.S. 45:1164 provides for exercise of regulatory authority by the Public Service Commission of municipally-owned utilities upon approval of the electors of the munici *1362 pality and such other electors as are customers of the public utility in an election held pursuant to R.S. 45:1164.1, et seq., R.S. 45:1164.2 provides that “Notwithstanding any other law to the contrary” upon the petition of not less than 25 percent of or 7,500 of the qualified electors residing within any municipality, whichever is lesser, the governing authority shall order a referendum election to be held to determine whether any public utility owned by the political subdivision shall be under the jurisdiction and control of the commission. Subsequent sections of the law contain detailed provisions for the conduct of the election.
R.S. 45:1161, et seq., contain neither express nor implied language indicating an intention to repeal R.S. 33:4491, et seq., or to prevent a city governing body from proceeding by ordinance as authorized in the latter statute. R.S. 45:1161, et seq., merely supplement the provisions of R.S. 33:4491, et seq., by providing an additional method by which the citizenry can petition for an election transferring jurisdiction over a municipally-owned public utility to the Public Service Commission.
Chapter 5 of the Preliminary Title of the Louisiana Civil Code deals with the repeal of laws. Article 22 provides that laws may be repealed either entirely or partially by other laws. Article 23 provides that the repeal may be either express or implied. It is implied when the new law contains provisions contrary to or irreconcilable with the former law. It has been repeatedly held that implied repeals are not favored and that they will not be resorted to except where the inconsistency is too clear and plain to be reconciled. Chappuis v. Reggie, 222 La. 35, 62 So.2d 92 (1952).
We hold that R.S. 33:4491, et seq. relating to initiating an election for surrender of regulatory authority to the Public Service Commission by ordinance were not repealed and remain in full force and effect. The procedure followed in presenting Proposition No. 2 to the electorate pursuant to these provisions was proper. The approval of that proposition effectively authorizes the exercise of regulatory authority by the Louisiana Public Service Commission.
The Commission Council of Monroe also called a separate election by which Proposition No. 4, essentially the same as Proposition 2, was submitted to the electors of the city and other electors residing outside of the city who were customers of the public utility, following in part the procedure outlined in R.S. 45:1164.1, et seq. The votes were separately tabulated and promulgated on Proposition No. 4, which was approved by the city’s electors as well as those voting outside the city.
The election on Proposition No. 4 did not substantially comply with R.S. 45:1164.1, et seq., because it was not called pursuant to a petition of the electors. However, the election on Proposition No. 4 substantially complied with the provisions of R.S. 33:4491, et seq. and is valid as having been conducted pursuant to those statutory provisions in the same manner as Proposition No. 2. The fact that electors outside .of the city also voted is of no consequence and did not affect or change the outcome of the election.
Contention No. 10: “The Operating Agreement and Propositions No. 2 and 4 do not comply with the requirements of L.R.S. 33:4491 et seq.”
Plaintiff contends that the election and proposition conducted pursuant to R.S. 33:4491, et seq., does not comply with R.S. 33:4494, which requires that the regulatory power shall vest in the Public Service Commission “immediately” upon the filing with the Public Service Commission of a certified copy of the order of the governing body declaring the election result, whereas Propositions 2 and 4 provide that the regulatory power will not vest until LP&L assumes the operation of the utility and action upon the company’s pending request for a rate increase has been concluded. The *1363 term “immediately” must be given a reasonable meaning, recognizing that in complex matters such as are involved here numerous factors, conditions and requirements must be met and come together before the entire plan can be put into effect. The time fixed in Proposition 2 and in the operating agreement for vesting of authority in the Public Service Commission constitutes substantial compliance with the requirements of the statute. Plaintiff further contends that the result of the election was declared by the Commission Council on Tuesday instead of the first Monday after the election as required by the statute. Again, there was substantial compliance with the statute.
Contention No. 11: “Municipal governing bodies may not exercise police power in contravention of state law or bond covenants for any reason, including a ‘public emergency.’ ”
In view of the conclusions reached in this opinion it is unnecessary to consider the city’s alternative argument that even if it failed to comply with all constitutional and statutory requirements and with contractual requirements under the outstanding bonds, its plan constitutes a lawful exercise of the police power of the city to meet a public emergency; nor plaintiff’s response to that argument.

Conclusion

The effect of this decision is to uphold the validity of the elections held July 9, 1977 in which Propositions 1, 2, 3 and 4 were approved by the electors of Monroe and to uphold the legality of the plan encompassed in those propositions for transfer of the operation of Monroe’s electric power system to Louisiana Power & Light Company, including the proposed operating agreement, the authorization for issuance of refunding bonds, and the vesting of regulatory authority in the Louisiana Public Service Commission.

Decree

For the reasons assigned:
(1) The judgment in Appeal No. 13,587 (No. 111,147 in the District Court) sustaining the exception of peremption and dismissing plaintiff’s suit is affirmed.
(2) The judgment in Appeal No. 13,585 (No. 111,145 in the District Court) is reversed insofar as it sustained the exception of no right of action and is affirmed insofar as it dismisses plaintiff’s suit.
(3) The judgment in Appeal No. 13,586 (No.' 111,146 in the District Court) is reversed insofar as it sustained the exception of no right of action and is affirmed insofar as it dismisses plaintiff’s suit.
The costs of appeal are assessed to plaintiff.

. Proposition No. 1:
Shall the City of Monroe, State of Louisiana (the “City”), accept the proposal and offer of Louisiana Power & Light Company (the “Company”) to operate the City’s electric power and light plant and system (the “Electric System”), separately from and independently of the City’s waterworks plant and system, and pursuant to which the City will grant to the Company a 60-year franchise to operate the Electric System and the right and option to acquire the Electric System for the considerations resulting from the terms of the agreement thereby proposed to be entered into, all in accordance with a written and signed proposal dated April 26, 1977, on file and available for inspection in the office of the Secretary-Treasurer of the City in the City Hall?

. Proposition No. 2:
Shall the City of Monroe, State of Louisiana (the “City”), surrender its powers of supervision, regulation and control over all electric *1357 utilities, electric utility service and electric rates in the City, commencing at such time as Louisiana Power & Light Company’s presently pending rate proceeding before the Louisiana Public Service Commission shall have been finally determined, but not before said Company shall have begun to operate the City’s electric power and light plant and system and to be effective so long as any electric franchise from the City to said Company remains in effect?

. Proposition No. 4:
Shall the Louisiana Public Service Commission (the “Commission”) regulate the electric power and light plant and system (the “Electric System”) owned by the City of Monroe, Louisiana (the “City”), commencing at such time as Louisiana Power & Light Company’s presently pending rate proceeding before the Commission shall have been finally determined, but not before said Company shall have begun to operate the City’s Electric System and to be effective so long as any electric franchise from the City to said Company remains in effect?

. Proposition No. 3:
Shall the City of Monroe, State of Louisiana (the “City”) under the authority of and pursuant to the provisions of Sub-Part C, Part 1, Chapter 10, Title 33 of the Louisiana Revised Statutes of 1950, issue its revenue refunding bonds to an amount not exceeding $33,133,250, to run not exceeding twenty-seven (27) years from date thereof, with interest at a rate not exceeding nine per centum (9%) per annum, for the purpose of refunding and unifying its outstanding Water and Electric Revenue Refunding Bonds and Water and Electric Revenue Bonds, Series 1966, Series 1967, and Series 1974, dated February 1, 1965, August 1, 1966, November 1, 1967, and August 1, 1974 (such outstanding bonds being payable solely from the income and revenues of the City’s combined waterworks plant and system and electric power and light plant and system, and having been issued pursuant to resolutions adopted on March 1, 1965, as amended on June 21, 1966, December 12, 1967, and July 9, 1974), said revenue refunding bonds to be payable as to principal and interest solely from the income and revenues to be derived from the City’s waterworks plant and system (the “Waterworks System”) and electric power and light plant and system (the “Electric System”) which may be operated as separate and independent utilities, with the governing body of the City being authorized to issue such revenue refunding bonds in two series, one series to refund that portion of the outstanding bonds attributable to the Waterworks System and to be payable solely from the income and revenues to be derived from the Waterworks System, and the other series to refund that portion of the outstanding bonds attributable to the Electric System and to be payable solely from the income and revenues to be derived from the Electric System?